Good morning and welcome to the Old Federal Building here in Anchorage. We are delighted to be here. I'm joined by Judge Pius and Judge Winn and we're delighted to be here in Anchorage to hear the cases set for oral argument today. It looks like the first three cases on our docket have been submitted on the briefs. Those cases are United States of America v. Anton Davis, United States of America v. Jason Schmitthofer, and CB Anchorage Hotel 2 LLC v. Unite Here Local 878. The first case set for oral argument here this morning is the Estate of Josiah Wheeler v. Garrison Property and Casualty Insurance Company. If the parties are ready to proceed, you may begin. Morning, your honors. Thank you for coming to see us. I'm Ken Covell. I represent the Wheelers and I'd like to reserve four minutes. The court questioned the application of Sauer to this case. Sauer applies, controls, and determines the outcome in Wheeler. Sauer invokes the Zurich Doctrine which says an insurer is obligated to defend even doubtful allegations where the allegations may fall within coverage. It also says the insurer that fails to defend is precluded from contesting coverage and that the insurer is bound by the judgment both as to the extent and existence of liability. In Sauer there were no genuine issues of material fact and in Wheeler there are no genuine issues of material fact. In Wheeler there is no prior litigation but Garrison admits that it's denial and it's denial letter that the cause was improper venting. May I ask you, how does Sauer relate to Whittier? Well, footnote 8 in Sauer says that since the change in sudden and unexpected, I'm not saying that right, is a change of the old pollution exclusion, the new pollution exclusion may not apply at all to situations that are not industrial. But the court in that footnote said they weren't touching that issue, correct? That's correct. They didn't decide that issue. Then what do we do with that footnote? Well, I think then that leaves open the question of whether or not the pollution exclusion is blanket excluded as to non-industrial situations which folds into the whole ball of wax of the absurdity arguments. Does it make any difference, counsel, that the language of the exclusion policy in Sauer was different? It might, judge. I'm not sure what differences you're focusing on. Well, it's exclusion for damages arising from a release of pollutants unless such release is sudden and accidental. Right. The sudden and accidental was eliminated from the Garrison policy. But there are other words in the Garrison policy also subject to interpretation because in Sauer they said, well, this may be subject to interpretation and therefore it's arguably covered and therefore there's a duty to defend and the duty to defend is broader than the duty to indemnify. And I can discuss the six words that I think substitute, as it were, for sudden and accidental if you'd like to hear that. Well, what I would be interested in hearing first from you, you know, the district court said that after Whittier that Whittier expressed the view that the pollution exclusion should be read literally. Where did the district go wrong with that statement? Why is that statement from the district court incorrect? Well, in Whittier itself, and I forget the number of the footnote, but Whittier says in the footnote, 58 maybe, that the pollution exclusion, even though it's called absolute, does not relate to all pollution-related liability. So that there's an out, some door of it. And I guess I'd add to this to say that I don't think Whittier says what Garrison wants it to say, that it absolutely said the pollution exclusion applies in all circumstances. So why is there some ambiguity, why is there any ambiguity here? Well, I might go into what I call the six words of exclusion. Sure. At page, I believe it's 148, the denial letter of the excerpts of records, small letter K, there's a listing of six words that have to apply for the pollution exclusion to apply. I call this my plain language argument. Those words are discharge, dispersal, release, escape, seepage, and migration. One of those has to apply. Let's get rid of two of those right away. Migration means from the kitchen to the living room or from Europe to the United States. This happened in an 8 by 12 bathroom, and that's in the report of the fire marshal. The heater's in the bathroom. There's no migration. It doesn't go anywhere. Migration is out. Same logic applies to the word dispersal. Dispersal means to cast out over a broad area. And, in fact, in the fire marshal's report, I think that's ER 138, it says the instructions for the heater say to exhaust the flue gases to the outside atmosphere. And, indeed, sadly, had there been dispersal, we wouldn't be here because Jishia would have survived. In fact, the carbon monoxide would have been dispersed into the atmosphere. So there's no dispersal. Those two words are out. That leaves four more words. That leaves discharge, release, escape, and seepage. I submitted a 28J letter a week or so ago with a definition of discharge that includes coming from confinement. And it's my contention in the brief as well that the pollution exclusion applies to coming from confinement. So in Whittier, you have gas in a tank that's meant to be confined. In Wheeler, you have the product of combustion that's meant to be dispersed. Perhaps a helpful analogy is to think of combustion in its simplest sense as a campfire, where the soot, ash, and what have you, carbon monoxide, convect up into the atmosphere. Then if you think of a home fireplace, it's a similar situation, but you forget to open the flue vent. You light the fire, and what happens? Into the living room comes the soot, ash, and smoke. That's what happened in our case. Getting back to the four words, discharge says coming from confinement. Release, and conjunctively and individually, all the definitions say coming from confinement. So you have discharge has that definition. We all do criminal work. Release and escape relate to getting out of jail. Release from jail, escape from jail, coming from confinement. Seepage is a slow escape, and so that has the confinement language. And on top of that seepage, there was nothing slow about it. It happened very rapidly if you read the fire marshals. So in your view, all of these four words suggest there's some ambiguity in how this exclusion should be applied? Absolutely. I suggest to you, and I ask you to make the de novo examination and rule, that the pollution exclusion by its own language and text does not apply in this case. But let me ask you this. It seems like the district court really thought that it was bound by Whittier, right? And Whittier, I'll agree with you, Whittier arises in a completely different context. It really does. It's different than this case. Why shouldn't we certify the question that you bring to us to the Alaska Supreme Court? That's an avenue to take. I initially thought that might be the right one. I'd suggest now that I think this case can be decided on the basis of the plain language. It can be decided on the basis of the dominant proximate cause, and it can be decided on the referral. And obviously I didn't know exactly where the court was going to Sauer, but as Sauer relates to the Zurich Doctrine. Well, we have confronted this exclusion in, I don't know, we certified a similar issue to the Nevada Supreme Court. Fino West, yes. Right, and we certified another issue, not a little bit different, but Apana. Apana, to the Hawaii Supreme Court. Both those courts took those cases. Absolutely. And the Nevada Supreme Court said that the exclusion didn't apply in that particular context, which was also carbon monoxide. Correct. The Casino West case is extremely similar to this case, except it was in a hotel, I believe. And I think the Hawaii Supreme Court never had an opportunity to decide that case, because I believe it's settled, if I'm not mistaken. That's my impression. Yes. Why shouldn't we do the same thing here? You also did Enron, and in Enron, it was a similar type of thing. It was injection of bad materials into a pipeline, and you said under Montana law, we can decide this without going to the Supreme Court. That's true. I mean, we can. We have the authority, and under diversity jurisdiction, we could decide this case, but we do have the option of certification. Why wouldn't we want to let the Alaska Supreme Court weigh in on it, given what they said, given the way the district court interpreted Whittier? Well, I guess one of the reasons is another year or three of litigation, but the other reason is I don't think it's necessary. I think you can look to the Alaska law and make the decisions on the issues. I just iterated that the plain language doesn't apply, so there is no pollution exclusion. The dominant proximate cause statute does apply, so it can't be denied for that reason, and also because it's an open question. I don't doubt Judge Gleason's sincerity in saying this case rules, but I don't think it does rule. I think there's the footnote both in Sauer that says it could apply just to industrial situations, and there's the footnote in Whittier that says it doesn't apply to all pollution. I hope that answers. Well, thank you. Thank you. You have four minutes and 40 seconds. Okay. All right. Well, I talked about the plain language. I guess, you know, my point, I think the strongest point, whether or not the court's in tune with it, is to say that the Zurich doctrine applies. Zurich says that if allegations fall within the coverage of the policy, whether or not they end up being there, that there's a duty to defend. If there's a breach of duty to defend, then the insurer is liable to the extent of the judgment over policy limits. And I think it would probably be wise for me to reserve my four minutes. Thank you. There you go. Good morning. It's wonderful to be back in court after two years that we've been not seeing each other, and good to have you back in Alaska. It is a joy to be able to do that again. Appellee USAA and Garrison Property asks that the court affirm the district court's grant of summary judgment in finding that the absolute pollution exclusion in this instance excludes coverage here. I note, as the justice pointed out, that the focus order had been issued by the court prior to our arrival asking specific questions about Sauer. How is that case going to affect this court's decision here? I would tell you that I don't believe that the case answers questions for the court here or assists in its particular review. I would say it's important to note that the Sauer court itself was addressing completely different policy language at the time. It specifically analyzed an exception to the pollution exclusion provision that actually was trying to bring coverage back in within the exclusion, which arguably would bring coverage back into play in that specific case. It was specifically looking at that language of sudden and accidental. The court then addressed for length in that footnote what was meant by sudden and accidental, spending time addressing mainly sudden. No such language exists here. That is not the question that is before the court. There, I would also say the Sauer court was noting at footnote 8 changes that were occurring throughout the country, specifically noting 1985 changes that were made to a variety of pollution exclusions where sudden and accidental was being removed. It surmised whether or not that removal of that language and then courts that were specifically looking at the issue of whether or not the pollution exclusion should apply only to active polluters within their business, meaning a type of business that seemed that it would be polluting in the natural course of its business, would suggest that the pollution exclusion wouldn't apply within the specific facts of Sauer. Of course, the court was not analyzing that and specifically said it was not doing so. That case specifically only dealt with whether or not the insured had received proper notice of what a denial would be, and then in that instance was whether or not a duty to defend was existing. Those issues are not at issue here. None of that is at issue here. For the court to rely on it here or think that it has some sort of effect, I would say it could not be the case where the Alaska Supreme Court actually looks at this exact issue and adopts the absolute pollution exclusion. We recognize that Sauer arose in a different context and that the policy language was different, but the fact that the Sauer court cited with some approval cases that stand for the proposition that these pollution exclusions really deprives active polluters of coverage, why can't we look at that as a shift towards applying the exclusion only to industrial pollution situations, which certainly wouldn't be this case? And then going back to Whittier, there is also the doctrine of reasonable expectation, so how do we look at that apparent approval in Sauer in that footnote citing these cases, limiting it to industrial pollution coupled with the doctrine of reasonable expectation? Why doesn't that then support the plaintiff's interpretation? Let me start with the first part of that question, Your Honor. First, I think that the court trying to look at Sauer and pull any idea from it as to what should be done in this case would ignore the nearly 40 years since of the law that it was trying to figure out or changes that were happening in 1985. By the time they get to Whittier, we've already now fast-forwarded another 10 years to 2008. We are now looking at the Alaska Supreme Court that's had certainly another 16 years. My math might be off, I've got to tell you, but it has had more time since that time to look at what has happened in the jurisdictions across the country, which is what it did, and it went through those cases to look at the majority and the minority decisions that had occurred regarding the absolute pollution exclusion. And in that instance, it went through a number of cases when you break it down to look at what was going on between the minority and the majority view, and it specifically looking at those facts said, we are adopting the majority view that we will have the reading that is the literal interpretation and absolute pollution exclusion will apply. So I think to go back to Sauer, we've had a series of additional jurisprudence in cases that came out that the Supreme Court of this state had the opportunity to take a look at and make a decision about. I'm sorry to interrupt you, but you agree that the Whittier Court specifically limited its holding to the absolute pollution exclusion generally contained in commercial general liability policies, correct? It definitely dealt with the commercial general liability policies. Well, I'm quoting from it. It says the absolute pollution exclusion generally contained in commercial general liability policies. It seems like it was specifically acknowledging that this was a commercial case and not a residential case. I just wonder if we don't agree with you as to the clarity of Whittier on the literal interpretation in every context. Why shouldn't we look to see what's been going on in other states, which if we do, you see that some states who had kind of accepted the commercial pollutant exception but are not accepting carbon monoxide in those pollutant exclusions? A variety of them. I mean, it's all over the place. And so why wouldn't we certify this question to the court, to the Alaska Supreme Court? So with regard to the specific questions of why on a CGL policy, meaning a commercial general liability policy, why would you be applying that analysis to this case? Certainly the Alaska Supreme Court, not only looking at the facts of particularly Whittier, also went through a series of cases, including Denny and Quadrant Corp., and in specific also was quoting Bitmus Casualty, going through a series of different cases that weren't just commercial in nature or were certainly addressing other issues. And I want to go back to Justice Wynn's comment as well, is in Sauer we knew that they were also talking about a CGL policy, but when we got to Whittier we certainly knew that the Alaska Supreme Court, if it meant to carve out a piece to say, wait a minute, we might not reach the same decision in a different case, could have referred to Sauer and said, hey, wait a minute, we might reach a different decision. They did not do that. Instead they were very firm in saying we are now adopting the majority position of the cases in this country, and then went on to say that all the other decisions that it had looked at, that it was rejecting of minority positions in Whittier, went to those issues that Your Honor is talking about, our Chief Justice is talking about, that were about whether or not there would be a different application in a different situation. I don't see that the Alaska Supreme Court here carved out to say we're keeping Sauer in our footnote number eight as a particular issue that we're going to look at at a later date. Right now, looking at the majority position that has been adopted by the Alaska Supreme Court, and then seeing what the district court did here, which was its position and what it had to do, and thus is a correct decision, is to go and look at what happened with carbon monoxide in cases where there is specifically adoption of the majority rule that the Alaska Supreme Court had already adopted on absolute pollution exclusion. Can you address how we should apply the doctrine of reasonable expectation in this case? Yes. Reasonable expectations under Alaska law mean that you read a literal interpretation of the policy, and it's not a subjective interpretation. It's an objective interpretation of the language that's in the policy. This is the homeowner's policy, right? Yes. So we're talking about the reasonable homeowner. We would be talking about a reasonable insured under a homeowner's policy or any other type of policy, but I don't know that unless the court's making it... Do you think there's any difference between a reasonable homeowner and a reasonable manufacturer or commercial entity? No. I'm not saying that there... You don't? No, Your Honor. I don't think there is. You don't think the Alaska Supreme Court would see a difference? No. In this... Treat them all the same. Yes. Let me explain why, though. Okay? I think that, yes, the court may believe that a business policy owner or business reviewing a business policy would have a different interpretation or may understand something differently. Here, the homeowner's policy, when you look at it and think of the average homeowner and you look at the words that are included and a literal interpretation of the words that exist in that policy, it is very hard to suggest that somebody would misunderstand what a pollutant is. There is... Or that it would apply to carbon monoxide. Carbon monoxide in that policy, does it? It doesn't. It doesn't. Actually, it defines pollution as a variety of items, including... Counsel, I see two different issues here. Even if carbon monoxide is a pollutant, and I think that Whittier supports Garrison's view that it is a pollutant, there's still a separate question as to whether the policy applies under the factual circumstances of this case, which is why the court directed you to Sauer in terms of what this exclusion is really meant to apply to a situation like this or whether it's really meant to apply to active polluters as in industrial situations. And I think this is where the doctrine of reasonable expectation really comes in because let's assume that carbon monoxide is a pollutant under the policy language. That doesn't necessarily mean that the exclusion applies under the circumstances of this case, right? I think there's still some arguments remaining for the plaintiff in terms of reasonable expectation. No, Your Honor, and I would say that I don't think there's a reasonable expectation argument where one could interpret the language of this policy as somehow excluding carbon monoxide, but including a variety of other pollutants. It does include carbon monoxide, but does it apply to a situation like this one? The only arguments that I'm aware of right now by the appellant is that there's some sort of distinguishment of the container, that there is some sort of, as he has outlined for you, non-dispersal, non-seepage, non-items, but there's no question that a hot water heater where carbon monoxide is escaping from it is seeping, is escaping, is releasing. I don't know how anyone would interpret that that would not be an ordinary reading for an everyday person. It is not outside the knowledge of an everyday homeowner that carbon monoxide is a problem where you need to make sure that there isn't carbon monoxide in the house because it is a pollutant. It would be difficult to understand how a reasonable interpretation would be, I apply this only to an industrial situation where I'm in a business owner moving gas containers or cartons in some way because when you look at this particular part, it is in a homeowner's policy for a homeowner and an average homeowner looking at that language and looking at the specific language of this policy, it's difficult to understand where it is that the average person on an objective standard wouldn't see that carbon monoxide would be an issue as a pollutant, which we ordinarily do know in the ordinary course, all of us, that that shouldn't be existing, and then to decide that that is an escape, a seepage, that type of movement of the pollutant. We recently, not recently, I don't know how many years ago it was, but we certified this very similar question under very similar circumstances to the Nevada Supreme Court, and you would have thought that given the existing state of the law in Nevada at the time we certified the case to them that the homeowner would have lost. The homeowner prevailed there. The Nevada Supreme Court said that the pollution exclusion under the facts of that case shouldn't apply. Why isn't it reasonable to assume, given the concerns that Judge Wynn raised with you, that the Alaska Supreme Court might take the same position? I want to start with the idea of certification. I also agree that certification isn't necessary here and that the court could make a determination and that the court should make a determination on the facts here. And whether or not, it was my understanding, looking at the Nevada case, that there was a distinguishment that it had not been as strong as the Whittier case in saying, indeed, we're adopting the absolute pollution exclusion. And looking at the majority of the cases across the country, not just Nevada, the majority of the cases which the court went through a great deal of effort to weed out the minority and majority opinions in Whittier, that they went through and would look at this case and say, instead, that the majority opinion and the majority opinions on carbon monoxide that, in fact, said under these types of policies that it is a pollutant and that it is the type of item that would apply to the pollution exclusion would be adopted. I don't know why the Alaska Supreme Court would make a different decision. I mean, in addition to Nevada, there are other state courts that have held that the exclusion did not apply to carbon monoxide, even when the past cases held that the exclusion was unambiguous as applied to other facts. And so it's just really hard to say, oh, we can predict exactly how Alaska will come out, especially, at least in my view, when Whittier contains no statement that appears to cement a literal interpretation approach beyond its facts. So what's your response to that? I would say that the court here, at least with the facts that it's presented and with what the district court did here, doesn't need to go to Alaska. I would say that even though Alaska has said in Whittier that it was adopting this under a CGL policy, that there's no reason to believe that there would be a different interpretation from a homeowner's policy where you look at the plain language that is there and the majority view that they adopted looking at the cases in Whittier would apply equally when you look at a homeowner's policy with the exact same language. There isn't a reason to believe that the reasonable person wouldn't be able to understand that language even applied in a homeowner's policy. The distinguishment I understand when you look at the other cases that you're discussing about carbon monoxide is some places where they indicated that they would apply the exclusion only to an industrial site or an industrial item. That's the minority view of the cases and right now, as we know, the Alaska Supreme Court has adopted the majority view and discussed its review of the minority cases within Whittier. Do you have any other questions? Okay. Thank you so much. Thank you. I would encourage this court or we ask this court to please uphold the summary judgment decision that was rendered by the district court. Thank you. Looking at Whittier, Whittier itself says, revised exclusion is so broad that it is often termed absolute even though it does not exclude all pollution-related liability. That's a quote and then that goes to footnote 18 in Whittier, which at the end of it says, in addition, the meaning of a number of terms in the exclusion is unclear. That coupled with your footnote, I believe it's 8 in Sauer, which says it may only apply to industrial sites, certainly leaves open the question for the Alaska Supreme Court to say. My whole spiel on absurdity is that there's no question that you draw a line, just the question is where do you draw the line. And my suggestion in my briefing is that you can look at the case law, which is all over the map for different reasons. One of the rationalizations besides what Ms. Graves said for not enforcing the pollution exclusion is just to say it's absurd and we're not going to enforce it. If under a literal interpretation of the pollution exclusion, slipping on bleach is excluded but slipping on ice is not excluded, how does that make sense and how does that meet the expectations of a reasonable homeowner? That's absurd. That folds into the Alaska case where somebody was hit by a car, was riding on the hood of the car, creative lawyer said, essentially they're a passenger in the car and they're covered. They said even though that's a little interpretation of the language, we're not going to enforce it. So I've got a whole lot of briefing on that. And just in Enron and in Casino West, they both used the language, without some limiting principle, the pollution exclusion would extend far beyond its intended scope and lead to absurd results. The limiting principles, I suggest, are inhalation, death, exceptions. I'm not saying to rewrite the policy to put those in there, but you have to consider those because the ISO, the Insurance Service Organization, said that you need that and you need a home heater exception to the exclusion in order for the pollution exclusion not to be absurd because the court should shun absurd results. Let's see. Also there's the SHE case spelled XIA versus Pro Home Builders, which is a Washington State case. And speaking of cases being all over the map, Washington State has three or four cases that seem incongruous. They decided SHE and Bank. And in SHE, even though some of them were fumes and some of them weren't, SHE was a home heater case, and they decided that in favor of the plaintiff based on the dominant proximate cause. The dominant proximate cause statute says, AS 21-36096, an insurer may not deny a claim if a risk, hazard, or contingency insured against is the dominant cause of the claim, even if an excluded risk is secondary to the chain of causes. And it's the same set of facts as Wheeler, and they say that even though they have cases that say deck fumes are excluded under the pollution exclusion, they found coverage under the dominant proximate cause theory. I'd ask that you consider the Zurich Doctrine under Sauer, which says that if it's arguably a covered claim, you have to defend. And if you don't, then you're precluded from disputing coverage and that you're liable for the full of the judgment. Also I'd ask that you consider the plain language and make a de novo review of those six words and also the dominant proximate cause. And I'm out of time, and I thank you very much. Well, thank you, Mr. Covell and Ms. Graves, for your oral argument presentations here today. The case of the estate of Josiah Wheeler v. Garrison Property and Casualty Insurance Company is submitted.
judges: MURGUIA, PAEZ, NGUYEN